May it please the Court, I'm Anne McClintock, Assistant Federal Defender, on behalf of Mr. Richman, appellate. I'm most interested in answering whatever questions the Court has. I want to start just very briefly regarding the procedural bar. I'm assuming if there are any questions, I'll get asked. I stick with the notion that it was not raised. The Court issued an order seeking supplemental excerpts, which we provided, I think, a variety of answers to. And I did provide the Court with a 28-J letter a week and a half ago, which I hope the panel got one nod. Essentially, my position regarding the procedural bar is the two claims that we have – the two areas on appeal have nothing to do with the claims that were raised in the California Supreme Court decision that relied on Henry Waltrius and Henry Dixon. So there's no application of a bar. But in any case, it shouldn't even be raised, given what this Court in Vang has held, about the proper posture for raising that sua sponte. So I'm going to leave that alone, unless there are questions. This case, I think – it's another case that's come up as a pro se litigant in district court. Before we leave the procedural default issue, I take it that the State didn't raise procedural default in the district court? No, they did not. All right. They did not raise it in the briefing either. So it was – first I heard of it was when the Court issued its order. There are two claims that we've presented on appeal. One has to do with ineffective assistance by trial counsel, and the other has to do with – I just drew a blank on how I phrased it – the exclusion of impeachment evidence regarding Officer Barnett. I want to focus for a little bit on the first one, because I think that's where the significant factual dispute exists in the record that was not resolved adequately by the magistrate judge and then adopted by the district court. And as much as I sympathize with the magistrate judge, because this is a difficult case as far as distance and organization of the petition. It's a very long petition. It is organized after a fashion, but it is not obvious when you delve into it exactly where his factual claims are and where the support for it is. But the two basic and fundamental errors that the magistrate judge made in dealing with the ineffective assistance counsel claim was to say that Mr. Richmond had provided bald assurances and no support. In fact, he provided his declaration, which is at Excerpts of Record, Tab 1, 122 and 123, where he explains a verified declaration is his mind. So he thinks he's sworn under oath. I don't know whether it satisfies the specific requirements, but I think it does. That his trial attorney essentially told him, you have no choice but to get up there and say, you didn't have a gun and you didn't assault anyone, and it's on you to do that. And when Mr. Richmond said, no, I don't want to do that, I want the truth to come out. I want Ms. Norgar, I've never had to actually say it out loud, testified, because she could attest to my innocence as to the assault with a deadly weapon charge. And there, the ineffective assistance claim interwines with the whole notion that a defendant has a personal right to decide whether to go to trial. A defendant has a personal right whether to decide to testify or to work. On Norgar, didn't trial counsel have a letter from Norgar's attorney saying that if she was called, she would say that your client did have a gun? I'm trying to think of the record regarding a letter. There is the allegation that Mr. Richmond admits that her testimony, that she told his trial attorney that she says essentially, I know he didn't have the gun when he went to the truck because I took it away from him. So it does implicate him on the felon in possession charge. I don't know whether the record has that. That actual letter in it. So I hesitated only to try to remember that. I don't remember. If he had the gun at that point in time, he's bingo on the third strike, isn't he? He's got problems on the felon in possession. He already had problems on the felon in possession, and that does, yes, you're smiling, it does trigger three strikes. My response to that is where I got into the Sixth Amendment problem, is that I view that truly as the defendant's decision. There is a conflict between what is the realm of a defense attorney's role in deciding strategy in a case and the decision of a defendant to waive, basically to enter a slow guilty plea is the way I view this. And what he's contesting, and this is the thing that I think needs to be developed better in district court and sorted out, what's the truth and what was the strategy and whether Mr. Richmond acquiesced to the advice he was given or whether he was just overshadowed by his trial attorney, is what he's alleging in his petition, again, it's an appropriate petition, is that I wanted the truth to come out. Yes, that may hang me on the felon in possession. Now, there are many consequences. A felon in possession conviction is not a crime. But is it your position that he had the right to determine who got called as a witness? Not who got called the witness per se. That is strategy. The case law says that that's for the defense, the trial attorney to decide. But he has the decision as to whether to plead guilty or not. So when there's a conflict that involves that witness decision, that conflicts with his decision to plead guilty to one of the counts. He has the right to plead guilty to count two. If he wanted to get up there and basically say, I was guilty of the felon in possession. I picked it up at the – because in the testimony, there's testimony about him having a gun in various times, not just in connection with the assault with a deadly weapon. So it's my position that he had the right to risk it, of being convicted on the felon in possession, in order to have the truth come out on the thing he said he was actually factually innocent of, which was the assault with a deadly weapon. Now, that can have a significant impact on his sentence now. I mean, his view of it – this is outside the record. I don't know if I should deal with it. But a felon in possession is not a crime of violence. It's a status offense. Assault with a deadly weapon certainly is a crime of violence. So when he comes up for parole, should he live long enough – and actually, I think the record is clear in our briefing that his sentence was reduced to 35 years to life, not 60. When he gets to parole, if he's still alive, the view that the Board of Prison Terms is going to have of him is significantly different if they view him as a violent felon or as a status felon during life's term. So that can have a consequence. So my view of this case, where the fundamental problem with it is that conflict between him wanting to risk conviction on one count in order to avoid conviction, he hopes his best chance is avoiding conviction on the count that he is actually innocent of. Let's back up a little bit. On this witness claim, his claim is that his counsel should have called Norgaard in hate, right? Correct. This is not a case where we have an affidavit from either of them? Not directly. It is a case where we have some representations as to what their testimony would have been. We don't have an affidavit, and we don't have any sworn testimony from either of them. What we do have is the letter that I referred to that would have made him put him in possession with a gun at some point. That's Norgaard. That's the letter from Mr. Bisno, I believe, which is Mr. Richardson's appellate attorney. And there was testimony at the trial from a witness named George that hate didn't witness this incident at all. That's true. But Mr. Hate's testimony go ahead. What the magistrate and the district court had in front of them is an assertion that these two witnesses would have helped your point in some respect. No affidavit, no sworn testimony, but a letter saying had a gun and a witness who said this hate person didn't witness the crime at all. So where is the error in the district court concluding as it did? There's no sworn testimony directly from Ms. Norgaard or Mr. Hate. There is sworn testimony from Mr. Richmond as to what his understanding, what they would have said based on his conversations with his trial attorney and the letters from Mr. Bisno. So I think there is a factual dispute even within the letters from Mr. Bisno and what Mr. Richmond says. Well, Mr. Richmond in his affidavit says he could, could have witnessed the events. He doesn't say he did. He could have. Other witnesses place that other witness about a mile or two away, don't they? That's true. And I will concede that as far as the assault with a deadly weapon, the deadly weapon part, hate is a weaker witness. So if I found him tomorrow, I don't know what he would say, whether he would help him or not. Part of Mr. Richmond's complaint, though, regarding hate also, though, was also that hate would have provided supporting testimony to his defense, which was basically there's been this ongoing confrontation between this out-of-control minor and that his intentions regarding this whole group of people was to help Ms. Norgaard get her foster child under control and back at the home, away from these adult men who have shown up. But why is this all so fuzzy in the district court? Why wasn't it developed in state court? Mr. Richmond tried his best, and there was no evidentiary hearing in the state court. It basically was summary denials across the board. There was he tried, and that's part of the reason that the briefing, his state briefing, I think, is so long is he's attaching exhibits that he has gathered as he's gone through. So he's presented what he could in the state courts, but the state courts never made any kind of merits or factual development decisions. So I don't recall. He requested. In other words, he presented specific information to the state court and requested an evidentiary hearing that was specifically denied? The latter question is no. There was my memory of the minute orders is that there's just they're denied on the merits, those kind of very short California decisions. Whether he specifically requested evidentiary hearings, I can't say. I don't remember exactly what he had in the pro se petitions at each level. One of the predicates to getting an evidentiary hearing in the federal court is that he has to show a factual predicate that could not have been previously discovered through the exercise of due diligence. All right. I want to acknowledge that I do know that my time is up, but I'd like to respond. That factual predicate and due diligence stuff, all of that is important and comes in when the other side has to. He doesn't have an opportunity to deal with this in state court when the order to show cause has been issued. And when the superior court or the court of appeals of the California Supreme Court just summarily deals with his petition, he's provided them with the evidence. As far as he knows, they're accepting what his factual assertions are and then denying it on some basis, some legal basis. So as far as while he's going through the state court process, he doesn't know that there's any factual findings that are being made against him. We don't know that. But there was no offer to the state court other than what you other than basically what was offered to the federal court. As far as I can tell, yes. I don't know that he specifically filed a motion requesting an evidentiary hearing. All right. Thank you. Good morning, Your Honors. Janine Bush on behalf of the Respondent. I'd like to address a couple of the questions that the Court just asked. The Court should be aware that there was a colloquy on the record, the trial record, RT-9 and again at RT-20, where the trial court took an extensive waiver from the defendant about wanting to admit his felon status. There was a commentary about the defense attorney having talked to the defendant about this whole issue. So these later affidavits are not necessarily reflective of what actually happened at the time. And the Court should also be aware that this defendant filed a number of petitions in the lower courts. And one of the petitions filed in the lower courts was a petition for radiohabeas corpus in the Tehama court, and it's at Exhibit D in the Exhibit to the Answer, to Respondent's Answer. And that petition was prepared by an attorney. It was very extensive. And it was the basis for the reduction in the sentence, as a matter of fact. So there was certainly opportunity for a counsel to raise witness issues, IAC issues, whatever, because we had a whole new attorney doing a whole new petition. It was not pro se. I think possibly the most important thing to realize here in the question of whether or not the trial court was correct in its exercise of discretion in denying an evidence you're hearing is to realize that we don't even get to the point of talking about whether or not the defendant developed the facts in the State court until we first talk about whether or not the record contains a factual basis for the claims. And it's basically the first step in three steps in analyzing whether or not an evidentiary hearing is appropriate. Not mandated, but appropriate. So this first step is whether the record contains a factual basis for the claims. Basically, we stop right there, because the record contradicts any factual basis for the claims. The record that is before the State courts and, in turn, before the district court. As the Justice has already noted, the Judge already knows now has let her talk to the defendant about his conversation with him. And she said, So, you know, who is an appointed attorney and who's doing his job, and he's interviewing a witness and he's collusion. And that's certainly more of what Valora Norgaard would say that the defendant would. And the court's already pointed out the difficulties with hate as a witness. And you basically are in a situation where the defendant says in an affidavit, Both record and other record materials that show that there's here. The point of asking the question. Why is there are witnesses? No doubt. Well, he says he didn't have a gun. Right. Is he entitled to an evidentiary hearing? No, Your Honor, because in the jurisdiction around evidentiary hearings, the defendant's conclusions are properly implied in the Nuremberg case. And when the State fails to make a claim for written habeas corpus with sentence, or factual conclusions in the denial of the claim has resolved on the claim. So whether or not you have, and then all this other record evidence saying not is what the State went with. And that's, again, at Marcell Campbell v. Vaughn, a situation where there isn't anything to review basically. The State court had made an unreasonable application of the law to this. That's not an evidentiary hearing.  Since the filing of our bra, this has come out with Lockyer. That has knocked out the Vantran standard of reviewing a State's decision under the clearly irrefutable law. That's favorable. The Supreme Court has stated that we have to review the law for unreasonableness. And that gives broader reports. The findings and recommendations here are under the Vantran standard. And I'm going to ask the Court to note that. We don't think even after they're reviewed, they're going back to the Ninth Circuit's approach as a screen. In other words, if there's any merit to it. And it was one methodology over another made by the federal courts. That question, which is preposterous or something like that. So it's a good thing to look at the precedent of the Ninth Circuit but other people have come to the same conclusions are reasonable. Okay. Thank you. All right. Regarding the exhibit D, my point regarding that is that Mr. Vantran had problems that he was having and that there were others. And he was trying to get this retained habeas counsel to raise, and that was the fodder of his ineffective saying regarding that. I don't think the fact that he was trying to get this retained habeas counsel to raise means anything to the court. I think that the Attorney General made a regarding direct appeal. And I would just point out that I think that that is the case. It's something I've briefed in my english. They're not always on the lines. And as the Supreme Court said, I believe it was this session in the 2255 context, habeas claims, especially in an effective decision of counsel, are not fodder for direct appeal. It's not the proper posture at the habeas stage. So I'll leave it at that. Thank you. All right. Thank you. The case just argued will be submitted to a move for the last case on the argument calendar for today, Suscoe v. Fuscoe. The last case which shows on the base sheet, Anthony V. S. McGrath, has been submitted on the range. I think that case is a record for excerpts. All right. Watch the clock then. Thank you, Your Honor. My name is Frank Parenteau. I represent Mr. Suscoe, who's been sentenced to prison for the rest of his life.   Watch the clock then. Thank you, Your Honor.
judges: Tg Nelson, Hawkins, Zilly